A95A2662. EDWARDS v. THE STATE.
(467 SE2d 379)

BEASLEY, Chief Judge.

Edwards appeals from his conviction and sentence on one count of the sale of cocaine. OCGA § 16-13-30 (b).

Evidence at trial showed that on October 22, 1992, a military police officer working undercover with the Hinesville police department purchased $50 worth of crack cocaine from Edwards. The officer was accompanied by a known source who had volunteered to assist the police in undercover drug operations and who arranged the purchase with Edwards. The police did not immediately arrest Edwards, so as to conduct further undercover buys in the area. He was arrested on November 6, when he turned himself in at the police station.

1. Edwards contends the court erred in denying his motion for new trial on the ground of ineffective assistance of trial counsel. This contention arises from an instance during Edwards' cross-examination of the volunteer source in which his counsel asked: "How do you know [Edwards]?" and the witness responded: "I know him through buying drugs from him before that day. When I was using drugs, he

was one of the individuals who I was buying drugs from."

Edwards' motion for new trial originally specified the two evidentiary grounds found in OCGA §§ 5-5-20 and 5-5-21. His brief in support of his motion argued additional grounds, including ineffectiveness of counsel, although there is no formal amended motion. The record does not show that he requested an evidentiary hearing on the ineffectiveness claim, which would ordinarily preclude consideration of the claim, see *Clair v. State*, 216 Ga. App. 414 (1) (454 SE2d 556) (1995), but an oral hearing on his motion was held where he argued his ineffectiveness claim. The trial court's order denying the motion states that it is denied on each and every ground. As the trial court did not hold that Edwards had waived his claim by his failure to request a hearing, and a hearing was held at which Edwards had the opportunity to address each of his bases for new trial and present witnesses as he deemed necessary, the trial court's decision on the ineffectiveness claim is reviewable. See *Pitts v. State*, 209 Ga. App. 47, 48-49 (2) (432 SE2d 643) (1993).

To prevail on his claim of ineffective assistance of counsel, Edwards must satisfy a two-part test. "First, [he] must show that counsel's performance was deficient; second, he is required to show that he was prejudiced by counsel's deficient performance. [Cit.] 'There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy.' [Cit.] [The second] question is whether there exists a reasonable probability that, but for his counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt ([cit.]), that is, but for counsel's unprofessional errors, the result of the proceeding would have been different. [Cit.] 'A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless clearly erroneous.' [Cit.]" *White v. State*, 216 Ga. App. 583, 584 (1) (455 SE2d 117) (1995).

Edwards contends he was not afforded effective assistance of counsel because counsel failed to request a mistrial after the witness's answer placed evidence of Edwards' bad character before the jury. Even if it is assumed that refraining from making the motion was deficient, the result would not have changed had such a motion been made, as defendant would not have been entitled to a new trial as a matter of law. The witness's answer was responsive to the question and Edwards could not complain of evidence elicited by his own question. *Wells v. State*, 212 Ga. App. 60, 62 (1) (441 SE2d 460) (1994). To hold otherwise would allow a defendant to engineer a mistrial.

Although Edwards now suggests counsel's performance was ineffective in asking "How do you know [the defendant]?" at the motion hearing he specifically informed the court he was not arguing that

asking the question was ineffective. Further, the question was asked during cross-examination concerning the witness's ability to recall the appearance and identity of the person who sold the cocaine. His cross-examination of the officer, the only other State witness directly involved in the drug purchase, centered on the same point. The primary defense presented in closing argument was that the State failed to reliably identify Edwards as the man who sold the cocaine. As the court noted at the hearing, the question was relevant to that defense, and it appears counsel asked the question in an attempt to discredit the witness's ability to identify Edwards.

The transcript of the hearing on his motion for new trial reveals Edwards presented no evidence, only argument. It does not appear he was prevented from calling witnesses. As a hearing was held at which Edwards could have demonstrated the unsoundness of the question but did not do so, he has failed to overcome the strong presumption that counsel's action was part of a valid, albeit unsuccessful, trial strategy. *White*, supra at 583 (1).

2. Edwards also contends the court erred in allowing the State to introduce into evidence a copy of the police booking report that showed him having two aliases, "Popeye" and "Tank." His ground is that it recorded an incriminating statement he made in response to the booking officer's questions, without his having received the *Miranda (v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)) warnings concerning self-incrimination prior to booking. See *Syfrett v. State*, 210 Ga. App. 185, 186 (3) (435 SE2d 470) (1993). He contends the report is incriminating because it allows the State to link him to the alias "Popeye" and he argued at trial that he is not known by that nickname, but only by "Tank." Although there is no evidence in the record concerning when, or whether, Edwards was given *Miranda* warnings, the State does not dispute that he had not been given the warnings before booking. Edwards relies only on his rights under the Fifth Amendment to the United States Constitution; he makes no argument under the provisions of the Georgia Constitution. Compare *Hudson v. State*, 188 Ga. App. 684, 685 (1) (374 SE2d 212) (1988).

It is undisputed that the police department requires the booking officer to complete a form report on all those arrested. The form requires information such as name, address, telephone number, social security number, date and place of birth, employer, height, and weight. The only other information required that would likely be provided by the arrested individual rather than the booking officer is "alias." Edwards did provide that information himself, in response to the booking officer's questions.

*Miranda* warnings are required " 'only when the individual is interrogated while in custody.' [Cit.]" (Emphasis omitted.) *Syfrett*,

supra at 186 (3). " '[T]he definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.' *Rhode Island v. Innis*, 446 U. S. 291, 301-302 (100 SC 1682, 64 LE2d 297) (1980)." (Emphasis omitted.) *Hibbert v. State*, 195 Ga. App. 235, 236 (393 SE2d 96) (1990).

Asking for a subject's name, age or date of birth, and address as part of a procedure "normally attendant to arrest and custody," *White v. State*, 168 Ga. App. 794, 796 (310 SE2d 540) (1983), constitutes questioning that is not reasonably likely to elicit an incriminating response. *Mincey v. State*, 257 Ga. 500, 507 (10) (360 SE2d 578) (1987); *White*, supra, 168 Ga. App. at 796. Recording such information is specifically required by OCGA § 17-4-27. Asking the names and addresses of family members is deemed reasonable and unconnected with the investigation of the crime for which the defendant was arrested. *Hibbert*, supra. In *Lester v. State*, 174 Ga. App. 886, 887 (2) (332 SE2d 31) (1985), confusion had arisen over a subject's name. His Fifth Amendment rights were not violated by asking for his name and some identification.

The record is silent as to the reason the police ask for aliases. We need not decide whether that is a question the police should know is reasonably likely to elicit an incriminating response. The report was not the only evidence linking Edwards to the nickname "Popeye," nor was any such linkage crucial to the State's case. The volunteer informant testified that she knew Edwards as both "Popeye" and "Tank" and that she had encountered him seven or more times before the undercover drug purchase. At trial, both the informant and the undercover agent identified Edwards as the person who had sold the cocaine. If it was error to admit the booking information on aliases, it was harmless. See *Kesler v. State*, 215 Ga. App. 553, 557 (4) (451 SE2d 496) (1994).

3. Finally, Edwards contends the evidence was insufficient to support the conviction under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Two witnesses identified Edwards at trial as the person who sold the cocaine on October 22. Edwards' attacks on their credibility only presented issues for jury resolution. *Jacobs v. State*, 207 Ga. App. 714, 716 (3) (429 SE2d 256) (1993). The evidence was sufficient to support the conviction. *Jackson*, supra.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 5, 1996.

*Merritt & Rose, C. Nathaniel Merritt*, for appellant.
*Dupont K. Cheney, District Attorney, Charles D. Howard, Assis-*

*tant District Attorney*, for appellee.

