## A06A1787. ELLIS v. THE STATE.
(642 SE2d 869)

BERNES, Judge.

Following a jury trial, Theron Howard Ellis appeals from his convictions on two misdemeanor counts of contributing to the deprivation of a minor. He argues that the evidence was insufficient to

sustain his convictions and that the trial court erroneously admitted into evidence two of his pretrial statements to police. We find no error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant no longer enjoys the presumption of innocence. *Thompson v. State*, 262 Ga. App. 17 (1) (585 SE2d 125) (2003). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence presented at trial showed that on a cold morning in January 2004, Cobb County police were dispatched to Ellis's home due to a neighbor's report that a small child was standing outside of the house unattended and crying. A Cobb County Police Department sergeant arrived at the residence at 9:30 a.m., approximately ten minutes after receiving the dispatch, and found a crying, shivering two-year-old child pressed up against the front door. The outside temperature was between 31 and 34 degrees that day and the child was not wearing shoes or a coat; he was clothed only in jeans and a tee shirt. His jeans were damp and his feet were wet from the moisture on the ground. The child displayed signs of mild hypothermia; he was shivering, his lips were blue and his body was cold to the touch.

While a fireman who had also arrived attended to the child, the sergeant knocked on the door and attempted to enter Ellis's home. She had difficulty doing so because a second, distraught one-year-old child was lodged against the front door. The sergeant managed to squeeze through the door and, once inside the home, announced her presence. She conducted a cursory search of the residence and found that there were no adults present.

Ellis returned home within five minutes of the sergeant's arrival. The sergeant explained that 911 had been called and that his son, who was found unattended outside the house, was presently being treated for exposure to the cold. Ellis mentioned that he had gone to his neighbor's house to help her with her television. He was uncooperative with the sergeant, and seemed to think that there was "too much ado . . . about this child" who had been found outside.

In the meantime, the child had been wrapped in warm blankets by emergency personnel. Hot packs had been placed underneath the child's arms, in his groin area, and around the trunk of his body in an effort to warm his body. He was subsequently transported to the hospital for further evaluation. Although it was never determined how long the child had been exposed to the cold, at some point after

he had been wrapped in blankets, his temperature was taken and registered at 96 degrees. By the time he arrived at the hospital, it had risen to 98 degrees.

1. This evidence was sufficient to sustain Ellis's convictions. Ellis was convicted of two counts of contributing to the deprivation of a minor, which required a showing that he "[w]illfully commit[ted] an act or acts or willfully fail[ed] to act when such act or omission would cause a minor to be found to be a deprived child." OCGA § 16-12-1 (b) (3). A "deprived child" is defined under Georgia law as a child "without proper parental care or control . . . as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (8) (A).

The jury was authorized to find that Ellis contributed to the deprivation of both of his children, ages one and two, by intentionally leaving them unattended. This act resulted in one child going outside in near freezing weather without the proper clothing and then being unable to get back into the house while the other child remained alone and distraught inside the house. Even though Ellis claims that he was only gone for a few minutes and that he was only "two brooms" distance away from the house, the child stood outside of the home long enough for his body temperature to drop two degrees and for his cries to be heard by the neighbor who called 911. Ellis failed to hear his child's cries and also failed to notice the activity surrounding the arrival of the police car, fire truck, and ambulance. He was totally unaware that emergency personnel had entered his home until he returned to his house and opened the front door.

We cannot agree with Ellis's characterization of the incident as merely a "close call[ ]" that did not rise to the level of criminal conduct, in light of the evidence showing that both children were emotionally upset and that one child was suffering from hypothermia due to the lack of proper parental care and supervision. The evidence supports a finding that Ellis wilfully left the children deprived. Any rational trier of fact could have found Ellis guilty of contributing to the deprivation of the two minors beyond a reasonable doubt. *Jackson*, 443 U. S. 307.

2. Ellis contends that the trial court erred in admitting certain pretrial statements that he made to police because at the time the statements were made, he had not been advised of the *Miranda*[1] warnings. We disagree and conclude that the record supports the trial court's determination that neither statement was subject to the strictures of *Miranda*.

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

(a) The first statement about which Ellis complains was made shortly after Ellis had arrived home and discovered his house filled with emergency personnel. Ellis had been at the house for approximately ten minutes. The sergeant, who had been busy taking care of the children, ascertained Ellis's identity as well as that of the children and also attempted to contact the children's mother. After the sergeant tended to these matters, she contacted a Crimes Against Children detective to advise him of the situation. While the sergeant was speaking to the detective on the telephone, Ellis interjected, "I don't know what the big deal is here." The sergeant then explained her concerns about the fact that the child had been found outside suffering from exposure to the cold, and asked Ellis if her explanation had helped him understand the significance of the situation. Ellis responded, "no," and shortly thereafter was placed under arrest.

The trial court found that Ellis was not in custody at the time these initial statements were made. "A person is not entitled to *Miranda* warnings as a matter of right, even though that person is a suspect, unless that person had been taken into custody or has been deprived of freedom of action in another significant way." (Citations and punctuation omitted.) *Carroll v. State*, 208 Ga. App. 316, 317 (2) (430 SE2d 649) (1993). "One who is under investigative detention pursuant to *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), or is the subject of a general on-the-scene investigation is not within 'custody.' " *Bailey v. State*, 153 Ga. App. 178, 180 (1) (264 SE2d 710) (1980). Accordingly, statements that are made during the course of a general investigation need not be preceded by *Miranda* warnings. Id. at 179-180 (1).

Moreover, "[t]he necessity of administering *Miranda* warnings exists only when the individual is *interrogated* while in custody." (Citation and punctuation omitted; emphasis in original.) *Jenkins v. State*, 219 Ga. App. 339, 340 (1) (465 SE2d 296) (1995). Voluntary or spontaneous statements not made in response to any form of custodial questioning or interrogation do not invoke *Miranda* and are admissible at trial. Id. at 341 (1).

Here, the record supports the trial court's determination that Ellis was not being interrogated and was not in custody at the time he made the statements. Because the trial court's ruling was not clearly erroneous, it must be upheld. *Harmon v. State*, 281 Ga. App. 35, 36 (1) (635 SE2d 348) (2006).

(b) Ellis next challenges a statement that he made to the Crimes Against Children detective after he had been arrested. When the detective arrived on the scene, Ellis was in the back seat of a patrol car. The detective approached Ellis and began asking him general booking information, such as his name, address, and date of birth.

During this general questioning, Ellis volunteered that he had only been gone from the house for two to three minutes.

The trial court found that Ellis's statement was voluntary and not made as the result of a custodial interrogation. Whether Ellis made his statement as a result of interrogation was a question of fact for the trial court, and we find no error in the court's conclusion that no interrogation occurred. See *Edwards v. State*, 220 Ga. App. 74, 77 (2) (467 SE2d 379) (1996); *Syfrett v. State*, 210 Ga. App. 185, 186-187 (3) (435 SE2d 470) (1993). We have held many times that the asking of general booking questions such as one's name, address, and birth date does not constitute an interrogation. See, e.g., *Edwards*, 220 Ga. App. at 77 (2); *Hibbert v. State*, 195 Ga. App. 235, 236-237 (393 SE2d 96) (1990). The trial court did not err in admitting the challenged statement.

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 1, 2007.

*David J. Koontz*, for appellant.

*Barry E. Morgan, Solicitor-General, Bonnie A. Derrer, Leann M. MacDougall, Jason B. Fincher, Assistant Solicitors-General,* for appellee.